THE PEOPLE, *ex rel.* Erastus Corning, President of the Proprietors of the Albany Pier, *vs.* NATHANIEL S. BENTON, Auditor of the canal department of the state of New York.

By the act of the legislature, passed April 4, 1849, (*Laws of* 1849, *chap.* 200,) provision was made for compensation to the owners of the pier connected with the canal basin at Albany, for all their rights in the said basin, and to the tolls to which they were then entitled, by directing that the sum of $30,000 should be paid to said pier owners "in lieu of tolls as heretofore paid to" them; provided the pier proprietors and the corporation of the city of Albany should, within six months, file in the office of the secretary of state, their consent to the terms and provisions of the act, and a release to the people of the state of all their interest in the said basin. The act also repealed the section of a previous act by which alone the right to the tolls was originally conferred. The consent and release were duly filed, within the period specified in the act; but the $30,000 directed to be paid to the proprietors of the pier was not paid till the 9th of April, 1850, and then without interest.

*Held* that the true construction of the act was that the right to the tolls, and the interest of the pier owners in the basin and the revenues thereof, were designed to be extinguished, from the period of the passage of the act, in the event of its subsequent acceptance by such pior owners.

Accordingly *held* that the acceptance of, and compliance with, the provisions of the act, by the pier owners, within the time required, was an effectual extinguishment of all right to tolls accruing after the passage of the act.

*Held, also,* that if there was any equity on the part of the pier proprietors to receive interest on the $30,000, either from the passage of the act, or from the date of their acceptance of its provisions, that was a consideration to be addressed to the legislature, and could not influence the court, on an application for a mandamus to enforce the payment of the money.

DEMURRER by the plaintiff to the return of the defendant to a writ of alternative mandamus issued to compel the defendant to draw his warrant on the treasurer, for the payment to the superintendent of the Albany pier, of the sum of $5087.78, with interest from 1st January, 1850, being the supposed amount of canal tolls accruing during the year 1849 for that part of the canal included in the Albany Basin. This amount was claimed under the 9th section of chapter 91 of the Laws of 1823, which authorized the construction of a basin in the city of Albany, at the termination of the Erie and Champlain canals, and directed so much of the tolls

as were received for that part of the canal included within the basin to be annually paid, in the month of December in each year, by the treasurer, on the warrant of the comptroller, to the pier owners. By chapter 200 of the Laws of 1849 provision was made for compensation to the pier owners for all their rights in the said basin, and to the said tolls. The amount provided in the act of 1849 for this purpose was $30,000, and this sum was directed to be paid "in lieu of tolls as heretofore paid to the pier owners." Provision was also made, in the same act, for paying to the city of Albany the sum of $121,462.63 with interest from February, 1843, "for the expenses incurred by the said city for excavating, clearing and cleaning out the basin opposite the said city, at the termination of the Erie and Champlain canals." The act was not to take effect unless the corporation of the city and the pier proprietors filed in the office of the secretary of state their consent to the terms and provisions thereof, and also a release to the people of the state of all their interest in the said basin within six months from the passage of the said act. This consent and release on the part of the city of Albany and of the pier proprietors were duly filed on the 29th day of September, 1849, and within the period required by the act in order to give it effect. The $30,000 directed in the act to be paid to the proprietors of the pier was not paid till the 9th of April, 1850, and then without interest, "and a receipt given therefor in full." These and other facts are set up in the return to the mandamus, and the defendant insists, 1. That by the consent and release aforesaid, and the acceptance of said sum of $30,000, the pier proprietors lost all right to the canal tolls of 1849, if any they ever had. 2. That the act of 1823 was unconstitutional, because not receiving the assent of two thirds of the legislature. The defendant therefore refused to draw his warrant. The plaintiffs demurred generally to this return, and insist that the pier owners are entitled to the tolls of 1849, because the said sum of $30,000 was not paid to them till April, 1850. The

other facts material to the disposition of the case are stated in the opinion of the court.

*J. V. L. Pruyn,* for the plaintiffs.

*Samuel Hand,* for the defendant.

*By the Court,* HOGEBOOM, J. The grounds upon which the plaintiffs rely for their right to enforce the remedy in question, as stated in the argument made before us, are substantially these : 1. That the right to the tolls was conferred by the act of 1823, and must necessarily continue until waived or released. 2. That this right was never waived, and was in no wise released or surrendered until actual payment of the sum of $30,000 as a substitute for the canal tolls. 3. That there is nothing in the act of 1849, which interferes with the right of the pier proprietors to these tolls.

The defendant relies upon three grounds of defense, each of which he claims constitutes an effectual bar to the plaintiffs' claim. 1. That by the provisions of the act of 1849 and the acts of the pier owners under the same, all right and title to these tolls on the part of the pier owners were extinguished and released. 2. That the same result was effected by the release and receipt in full which the pier proprietors voluntarily executed. 3. That the relators never had any legal right to receive tolls under the act of 1823, by reason that said act is unconstitutional and void.

These questions, so far as necessary for the determination of this case, will now be considered.

The act of 1849 was passed on the 4th of April, of that year, and before the opening of the canal for that season. By the first section the sum of $30,000 was to be paid to the pier owners *" in lieu of tolls as heretofore paid "* to them. The word *" heretofore "* refers to the time of the passage of the act ; and the clause in question would seem to import that from that date the interest of the pier owners in the

tolls, *as such,* was to cease, and a sum in gross to be paid to them as a substitute therefor, and from that time.   It is true no provision is made for interest on that sum in case the payment was delayed, as would seem to be equitable in such a contingency.   But it is probable that immediate or speedy payment was contemplated by the legislature.   Provision is made in the same section for borrowing on the credit of the state a sum adequate to pay the $121,462.63 to be paid to the city of Albany, and the $30,000 to be paid to the pier proprietors.   By the third section of the act certificates of stock for this loan were to be issued and disposed of, for the purpose of raising this money ; and there is nothing in the act to show that this was not to be done forthwith, or at least immediately after the consent of the parties to whom these sums were to be paid had been obtained.   It is true, also, that provision is made in the act, for the payment of interest on the sum directed to be paid to the city of Albany "from the twentieth day of February eighteen hundred and forty three to the time of such payment."   But two reasons for the distinction are apparent.   1. The amount to be paid to the city of Albany was to defray expenses *theretofore incurred,* and not as in the case of the pier owners *thereafter to accrue.*   2. The existence of such a claim on the part of the city was recognized by the act as equitably dating back more than six years before the passage of the act, and it was doubtless deemed fair to pay interest thereon from that period.

The 6th section of the act of 1849 is as follows : " The ninth section of the said act (of 1823) whereby certain tolls on canal boats, craft and lumber are directed to be collected and to be paid over to the pier owners, is hereby repealed. But such repeal shall not affect the rights of said pier owners to any tolls heretofore collected, to which they were entitled under said act."   This seems to be a plain legislative declaration of the object and intent of the law makers as to the question now under consideration.   It provides, in effect,

that no future tolls are to be paid over to the pier proprietors. And it would seem to be manifest from this section alone that the legislature contemplated that an acceptance of and compliance with the provisions of the act by the pier owners would be an effectual extinguishment of all right to tolls accruing after the passage of the act, and that such was the intention of the parties thereto. It is said that this section was inoperative without the consent of the pier owners. Admit that this is so. They have given their consent. It is said that the whole act must be construed together, and that the consent was given upon the implied understanding that their rights to tolls should not be extinguished until *payment* of the substituted consideration. I can not give such a construction to the act, in the face of so plain a declaration. The legislature repeals the 9th section of the act of 1823 by which alone the right to the tolls is conferred. The relators consent to this repeal. This consent is not given, it is true, till September, 1849, nearly six months after the passage of the act. But from that time it becomes valid and operative, and must be construed according to its plain terms and obvious import. The words *"heretofore"* and *"hereafter,"* contained in the act, refer to the period of its passage, and not of its acceptance by the pier owners.

The 8th section of the act of 1849 is that which prescribes the mode and period in which the consent and release are to be given. They must be assumed to have been in conformity to the provisions of the act. The *consent* was therefore a consent, in effect, to each and every section, provision and direction in the act. The *release* was "a release of all *their* (the proprietors) interests in said basin." This fairly implies not only a release of any right of property which they may be supposed to have had in the basin or the waters thereof, but of all right to tolls or charges growing out of their use or occupation by others.

The 9th section of the act of 1849 is framed, it would seem, in accordance with previous sections, upon the idea that

henceforth the interest of the pier owners in the tolls was at an end and was to be thereafter vested in the state, for it provides that "the same rates of toll shall hereafter be charged and collected for said basin as on the canals of this state, computing the same in all cases as one mile in length, and which shall be considered as forming part of the canal revenus, and not be diverted therefrom, and the said basin shall remain free for canal boats and canal craft from any charge. for wharfage or dockage, and the said basin shall be owned by and remain the property of this state and be under the care and charge of the canal commissioners."

It is impossible, I think, to read the act of 1849, and especially the sections from which I have quoted, without a decided conviction that the sum to be paid to the pier proprietors was designed to extinguish their right to tolls, from and after the passage of the act. It was not any particular or specified tolls to which the act referred, but tolls generally—the *right* to tolls. A new mode of compensating the pier owners for their outlays was provided, to wit, by payment of the principal sum disbursed, instead of interest thereon in the shape of tolls. This latter mode of compensation was to cease from that date.

A specious but I think unsound argument in opposition to this view is attempted to be derived from the legal principle that a sale is not complete, and title does not pass, till payment or delivery. This is true as a general rule, but must be taken with the qualification, "unless the contrary is expressly agreed or is fairly to be inferred from the declarations or conduct of the parties." This qualification, I think, applies to the present case. The act is not susceptible, in my opinion, of any other fair and reasonable construction than that the right to tolls and the interest of the relators in the basin and the revenues thereof were designed by the parties (the legislature and the pier owners,) to be extinguished from the period of the passage of the act, in the event of its subsequent acceptance by such proprietors.

There may be a strong equity that as there occurred an unexpected delay in paying to the pier owners the sum intended for them by the act in question, and apparently arising in part at least from the action of the state officers, the pier proprietors should receive interest on the $30,000 either from the passage of the act or from the date of their acceptance of its provisions. But these are equitable considerations which can not influence our action, and must be addressed to the legislature.

Having confidence in the view of the case here presented, and regarding it as fatal to the relators' right to maintain this proceeding, I do not deem it necessary to discuss any other questions raised in the case, and particularly that involving the constitutionality of the act of '1823.

There must be judgment for the defendant, on the demurrer, with leave to the plaintiffs to withdraw the same and plead to the return, on payment of costs.

